## Richmond.

MARYE, AUDITOR, V. BOARD OF AGRICULTURE AND OTHERS.

JANUARY 12, 1899.

1. BOARD OF AGRICULTURE—*Out of what Fund Salaries and Expenses to be Paid—Public Funds.*—The appropriation bill approved March 3, 1898, expressly forbids the payment of the salaries of the Commissioner of Agriculture and his clerk, and the expenses of the Bureau of Agriculture, or any part thereof, out of the public treasury, and repeals, if not expressly, by necessary implication, all former laws authorizing such payment. No money can be paid out of the public treasury except in pursuance of appropriations made by law, and in the case at bar there has been no such appropriation. The act provides that the salaries and expenses aforesaid shall be paid " from the fees and taxes collected on forfeitures."

Error to a judgment of the Circuit Court of the city of Richmond rendered November 1, 1898, on a petition for a *mandamus* by the defendants in error against the plaintiff in error.

*Reversed.*

*Attorney-General A. J. Montague,* for the plaintiff in error.

*R. Carter Scott,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

A. S. Buford and others, constituting the Board of Agriculture, presented their petition to the Circuit Court of the city of Richmond asking for a *mandamus* against Morton Marye, Auditor of the Commonwealth, requiring him to pay certain warrants drawn upon him by the Treasurer of the Board of

Agriculture, and countersigned by its President, amounting to $597.65. The petition recites that grave duties are imposed upon the Board, of much importance to the agricultural interests of the State, in the preparation of handbooks, the examination and testing of fertilizers, the distribution of seeds, the publication of information, and the making of annual reports; that, for the purpose of carrying out the designs for which the Board was established, an appropriation of $10,000 was made .by an act of the Legislature, approved March 5, 1888, which was to be placed to its credit, and drawn out by warrants of the said Treasurer, countersigned by the President of the Board. Relators further aver that this law has never been repealed, unless it be by act approved March 3, 1898, and that it was in full force and effect on the 1st day of October, 1897. They claim that under the provisions of this act, on the first day of October, 1897, there was, or should have been, on the books of the Auditor, to the credit of the Board of Agriculture, the sum of $10,000, and that warrants were drawn as required by law on this fund, which were honored by the Auditor, for the sum of $7,118.81, of which $5,161.62 were paid prior to March 3, 1898. Relators claim that the moneys thus paid should have been charged against the $10,000 appropriated by the act of 1888, and if that act was not in force, then the payment was without authority of law, and the Auditor is without authority to use money dedicated to other purposes by the Legislature to wipe out this overdraft. Relators further allege that, in order to keep the Bureau of Agriculture a "going concern," and to pay salaries and expenses, they drew upon the Auditor sundry drafts amounting to $597.65, which he has refused to honor because of the provision of the general appropriation bill approved March 3, 1898. Warrants numbered 1, 2, 3, and 4 filed with petition were for the expenses of the Bureau, and those numbered 5, 6, and 7 are for salaries of officials and employees of the government.

Section 8 of an act of March 5, 1896, Acts of Assembly 1895–6, p. 926, is as follows:

" The Board of Agriculture shall adopt all needful rules and regulations providing for the collection of money arising from the fees aforesaid, or from fines imposed under this act, and shall require the same to be deposited with the Treasurer of the State, and only to be drawn therefrom upon warrants issued by the Auditor of the State, out of which shall be paid only the expense of carrying out the provisions of this act, including a commission of three *per centum* to the Commissioner of Agriculture for collecting and disbursing the said fees and fines, which sum for all purposes shall not exceed the sum of three thousand dollars in one year."

It appears from the petition that there has been collected under that section, and deposited with the Treasurer of the State, the sum of $7,090. Relators claim that this fund is " ear-marked " by law, and can only be used in paying expenses incurred in carrying out the " Fertilizer Laws " of the Commonwealth, and a commission of three *per centum* to the Commissioner of Agriculture. When the Auditor " read the appropriation bill approved March 3, 1898, and found that he had allowed the sum of $7,118.81 to be drawn out of the treasury, and believing that he had no authority of law therefor, (he) laid violent hands on the above money received from fertilizer *taxes*, amounting to $7,090, and used it, as he claims, to wipe out the aforesaid overdraft." This act on the part of the Auditor is claimed to have been without authority of law. Relators further aver that they are officers of the State, that their employees are employees of the government, and come within the exception of clause six of the act approved March 3, 1898. They therefore pray for a writ of *mandamus* to compel the Auditor to honor the warrants drawn upon him.

To this petition the Auditor of Public Accounts filed his answer, and denied that the Commonwealth of Virginia owes the relators, or any one for their use, the sum of $597.65, but admits that there is now in the treasury the sum of $159.12 applicable to the payment of the warrants drawn upon him. He avers that the act of March 3, 1898, repeals the act of

March 3, 1888, and all subsequent acts, in so far as said act appropriates any money for the benefit of the Board of Agriculture. He states that during the fiscal year ending September 30, 1898, there was collected and paid into the treasury taxes and fees on fertilizers amounting to $7,090, and that he paid warrants drawn upon him by the Board during that period amounting to $6,930.88; that the several unexpended balances of prior annual appropriations made for the benefit of the Board of Agriculture have been heretofore, at the close of the several fiscal years, duly settled, and are not now available to pay the warrants mentioned in the petition.

It is not to be denied that much confusion exists in the legislation with respect to the Board of Agriculture, but the Legislature, when it passes an appropriation bill, is presumed to know the condition of the treasury, the sums that have been theretofore paid out under existing laws, the balances to the credit of the various divisions of the State government, and the sums paid out for their support.

The appropriation bill (Acts 1895–6, p. 608) is entitled "An act appropriating the public revenue for the two fiscal years ending respectively the 30th day of September, 1896, and the 30th day of September, 1897." Indeed, all the appropriation bills, so far as we have examined them, have a similar, if not identical, title and appropriate money for the fiscal year beginning on the 30th of September preceding their passage, and cover the period of two years from that date.

No money can be lawfully paid out of the treasury except in pursuance of appropriations made by law. Constitution of Virginia, article 10, sec. 10. When the Legislature came to pass the appropriation bill of March 3, 1898, it is presumed to have done so with full knowledge of the situation. It knew the previous legislation with respect to the Board of Agriculture, and that by virtue of it the Board had paid into the treasury a certain sum derived from fees collected in the performance of its duties. It knew that the Auditor had paid out

a certain sum of money upon the warrants of the Board, and it took the situation just as it existed, and passed the act of March 3, 1898. Acts 1897–8, p. 717.

There is appropriated by that act for the fiscal years ending September 30, 1898, and September 30, 1899, for the " Commissioner of Agriculture, salary of, twelve hundred dollars. His clerk, salary of five hundred dollars, which, with all other salaries and expenses of the Bureau of Agriculture, shall be paid from the fees and taxes collected on fertilizers, if sufficient for the purpose; if not they shall be paid *pro rata* from said funds; but in no event shall such salaries and expenses, or any part thereof, be paid out of the public treasury. Should there be any excess from said taxes and fees on fertilizers, the same shall be paid into the treasury."

Language could hardly be more explicit, and by force of it any authority of law which may theretofore have existed for the payment out of the public treasury of any sum for salaries and expenses on the part of the Board of Agriculture was repealed, if not in express terms, by a necessary implication. If the fees and taxes were sufficient to pay the salaries and expenses, well and good; if insufficient to pay them in full, the funds were to be distributed *pro rata;* if more than sufficient, the surplus is to be covered into the treasury ; but " in no event shall such salaries and expenses, or any part thereof,. be paid out of the public treasury."

The Circuit Court was of opinion that the salary of the Commissioner could be discriminated from other expenses and salaries of the Bureau of Agriculture, and was payable out of the treasury. This view rests mainly upon the punctuation. The law says, " Commissioner of Agriculture, salary of, twelve hundred dollars," with a period after the word dollars. " His clerk, salary of five hundred dollars," and then follows the paragraph as above quoted. While conceding the force of the views presented by the Circuit Court in its opinion, we are constrained to the conclusion, reading the whole paragraph

together and thus seeking to ascertain its true intent and meaning, that there was no purpose upon the part of the Legislature to distinguish or discriminate the salary of the Commissioner from other salaries and expenses of the Bureau of Agriculture. " The Commissioner of Agriculture, a salary of, twelve hundred dollars.   His clerk, salary of five hundred dollars, which, *with all other salaries and expenses* of the Bureau of Agriculture, shall be paid from the fees and taxes collected on fertilizers if sufficient for the purpose; if not they shall be paid *pro rata* from said funds; but in no event shall such salaries and expenses, or any part thereof, be paid out of the public treasury."   The writ of *mandamus* will not issue in such a case except to compel the performance of a plain duty.   There can be no payment of public money except in pursuance of law, and we have been able to discover no such law applicable to this case.

It is not for us to express any opinion upon the merits of the methods pursued in the management and control of the finances of the State.   They are doubtless such as have come down to us from the past, and will prevail until altered by law.   Our duty ends when the conclusion is reached that there is no existing law which, in our judgment, requires us to grant the prayer of the petitioners.

Certain formal objections were taken to the petition, but upon them we express no opinion.

The judgment of the Circuit Court must be reversed, and the petition dismissed.

*Reversed.*